IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| **INGENIOSHARE, LLC,**<br><br>                 Plaintiff,<br><br>     v.<br><br>**EPIC GAMES, INC.,**<br><br>                 Defendant. | **Civil Action No. 6:21-cv-00663-ADA**<br>**JURY TRIAL DEMANDED** |

**DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE**

**TABLE OF CONTENTS**

|     |     | Page |
| --- | --- | --- |
| I.   | Introduction | 1 |
| II.  | Factual Background | 2 |
|      | A. The Parties and the Accused Technology | 2 |
|      | B. Epic Games Has Limited Connections to the Western District of Texas | 3 |
| III. | Legal Standard | 4 |
| IV.  | Argument | 5 |
|      | A. Epic Games Does Not Reside in the Western District of Texas | 5 |
|      | B. Epic Games Does Not Have a Regular and Established Place of Business in this District | 5 |
|      |     1. Employee Homes Are Not Regular and Established Businesses of Epic Games | 6 |
|      |     2. Retailers' Stores That Sell *Fortnite* Products Are Not Regular and Established Places of Business of Epic Games | 8 |
|      | C. Any Alleged Acts of Infringement Are Irrelevant Because IngenioShare Cannot Show that Epic Games Has a Regular and Established Place of Business in this District | 10 |
| V.   | Conclusion | 11 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bd. of Regents, the Univ. of Tex. Sys. v. Boston Sci. Corp.*,
  No. 17 Civ 1103, ECF No. 27 (W.D. Tex. Mar. 12, 2018), *aff'd*, 936 F.3d
  1365 (Fed. Cir. 2019) ................................................................................................. 6

*Correct Transmission LLC v. ADTRAN, Inc.*,
  6:20-cv-669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) (Albright,
  J.) ............................................................................................................................ 8, 10

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ..................................................................... 5, 6, 7, 10

*CUPP Cybersecurity LLC v. Symantec Corp.*,
  No. 3:18 Civ. 01554, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) .......................... 6

*In re Google LLC*,
  949 F.3d 1338 (Fed. Cir. 2020) .................................................................................. 8

*Koss Corp. v. Peag LLC DBA JBLA Audio*,
  6:-20-cv-662-ADA, Dkt. No. 43 (W.D. Tex. June 22, 2021) (Albright, J.) .......... 9, 10

*Koss Corp. v. Skullcandy, Inc.*,
  6:20-cv-664-ADA, 2021 WL 1226557 (W.D. Tex. Mar. 31, 2021) (Albright,
  J.) ............................................................................................................................. 8, 9

*L & H Concepts LLC v. Schmidt*,
  No. 07 Civ. 0065, 2007 WL 4165259 (E.D. Tex. Nov. 20, 2007) ............................. 4

*Laserdynamics Inc. v. Acer Am. Corp.*,
  209 F.R.D. 388 (S.D. Tex. 2002) ............................................................................... 4

*Optic153 LLC v. Thorlabs Inc.*,
  6:19-cv-667-ADA, 2020 WL 3403076 (W.D. Tex. June 19, 2020) ........................... 4

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
  137 S. Ct. 1514 (2017) ............................................................................................... 5

*In re ZTE (USA) Inc.*,
  890 F.3d 1008 (Fed. Cir. 2018) .................................................................................. 4

**Statutes**

28 U.S.C. § 1400(b) ........................................................................................................ 5, 10

# **TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

28 U.S.C. § 1406(a) ................................................................................................................5

**I.      INTRODUCTION**

Plaintiff IngenioShare, LLC ("IngenioShare") claims that Defendant Epic Games, Inc.'s ("Epic Games") video game, *Fortnite*, infringes IngenioShare's patents. Epic Games disagrees. Regardless of the substance of the underlying claims, IngenioShare's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3). Under Federal Circuit precedent, IngenioShare bears the heavy burden of establishing that venue in the Western District of Texas is proper. IngenioShare cannot satisfy its burden because (a) as IngenioShare tacitly concedes, Epic Games does not reside in this District; and (b) Epic Games does not have a regular and established place of business in the Western District. In its Complaint, IngenioShare relies on two sets of allegations regarding venue, neither of which is sufficient to establish venue as a matter of law. Moreover, IngenioShare's "factual" allegations do not hold up to scrutiny.

***First***, IngenioShare alleges that Epic Games has job postings referencing Austin, Texas as well as employees working in this District. The job postings, however, are not relevant as a matter of law because they are advertisements for future employment, not evidence of employees working in this District. For this reason alone, these job postings do not establish that Epic Games has a place of business in this District. Additionally, potential employees applying for the listed positions could choose to work in one of several states—Texas was only one possible location for these positions.

As to Epic Games employees actually working in this District, these employees all work ***remotely*** from their homes as a matter of their own convenience, not as a requirement of their jobs with Epic Games. Epic Games has not ratified their homes as Epic Games' places of business, nor does Epic Games store inventory in their homes. As this Court has previously found, the homes of remote employees are not regular or established places of business. Thus, IngenioShare's employee-related allegations are insufficient to establish venue.

*Second*, IngenioShare alleges that third-party retailers in this District, such as Best Buy, sell *Fortnite*-related goods.  This argument is similarly misplaced.  As a matter of law, third-party retailers are only considered a defendant's place of business when the defendant has possession or control over the shelf space on which products are sold.  Here, Epic Games does not control the manner in which its products are sold in the stores of third-party retailers, let alone lease or own the shelf space on which its products are sold.  Further, Epic Games relies on third party distributors to sell their physical retail products and does not maintain any direct relationships with the third-party retailers.  As a result, this alleged retail placement does not establish venue in this District.

Accordingly, Epic Games respectfully requests that the Complaint be dismissed in its entirety.

## II.     FACTUAL BACKGROUND

### A.     The Parties and the Accused Technology

IngenioShare is a limited liability company organized under California law.  Dkt. No. 1 ("Compl.") ¶ 2.  According to its Complaint, IngenioShare partners "with inventors and entrepreneurs to provide innovative market-driven ideas and user-friendly technologies."  Compl. ¶ 18.  IpVenture, Inc., a patent portfolio company, appears to be IngenioShare's predecessor-in-interest.  *See id.* ¶ 19, Compl. Exs. A–B.  Epic Games is not aware of any products that IngenioShare or IpVenture manufactures or sells that practice the claimed inventions of the patents-in-suit, nor does IngenioShare allege any in its Complaint.  *See generally* Compl.  Other than initiating a lawsuit in this District, IngenioShare has no discernable connection to or interest in the Western District of Texas.

Epic Games is a corporation organized under Maryland law, and headquartered in Cary, North Carolina.  *Id.* ¶ 3; Declaration of Lara Morgenthaler ("Morgenthaler Decl.") ¶ 7.  Epic

Games is a leading interactive entertainment company and a provider of 3D engine technology. *Id.* ¶ 8.  It is recognized worldwide as the creator of several video games, including the hit video game, *Fortnite*. *Id.*  *Fortnite* may be played by multiple players concurrently, and it contains an in-game communication system that allows players to communicate with each other during gameplay. *Id.*  IngenioShare alleges that *Fortnite*'s in-game communication system infringes IngenioShare's patents. Compl. ¶¶ 29–32.

### B. Epic Games Has Limited Connections to the Western District of Texas

Epic Games' connection to this District is limited.  Epic Games does not own or lease any office buildings, warehouses, or any other type of physical location within the Western District of Texas.  Morgenthaler Decl. ¶ 10.  Instead, IngenioShare seemingly relies on two types of alleged connections: (1) employees located in this District; and (2) alleged sales of "accused products" in this District.  *See* Compl. ¶¶ 7, 9.  These "connections," however, are limited at best and fail to establish proper venue.

First, IngenioShare asserts that Epic Games advertises job positions in this District: however, of Epic Games' approximately 3,500 employees worldwide, only 20 are located in the Austin, Texas area.  Morgenthaler Decl. ¶ 9, 11.  These 20 employees are not involved in developing or maintaining the accused features of *Fortnite*. *Id.* ¶ 13.  Further, they work from their homes, not from a physical location established, maintained, or ratified by Epic Games. *Id.* ¶ 11.  These employees work in this District for their personal convenience; Epic Games does not require any of its employees to work from Austin, Texas or any other location in this District. *Id.* ¶ 12.  In fact, these employees would be able to work remotely from or relocate to California, Massachusetts, Michigan, New York, or other Texas Districts. *Id.*  Further, Epic Games does not own or rent any portion of these employees' homes, nor does it store any inventory in those homes.

*Id.* ¶ 14. Epic Games has never held out these employees' homes as Epic Games' place of business. *Id.* ¶ 15.

Second, IngenioShare attempts to connect Epic Games to this District by relying on the sale of "accused products" in this District by third parties, such as Best Buy. Compl. ¶ 9. *Fortnite*, however, is a video game that players digitally download from the Internet,[1] and physical products related to *Fortnite* sold in retail spaces are limited. Morgenthaler Decl. ¶¶ 19–22. Here, Epic Games does not control any of the physical retail spaces within this District or how *Fortnite* products are sold at those locations. Specifically, Epic Games does not lease or rent any physical retail space within this District. *Id.* ¶ 18. Instead, Epic Games relies on third-party distributors to sell its physical retail products. *Id.* ¶ 19. Warner Bros. Home Entertainment Inc. ("WBHE")—not Epic Games—distributes various *Fortnite* game add-ons, such as *Fortnite: The Last Laugh Bundle*. *Id.* ¶ 21. Epic Games does not control if or how these products are sold in physical retail spaces within this District. *Id.* And console makers such as Microsoft Corporation ("Microsoft"), Nintendo of America Inc. ("Nintendo"), and Sony Interactive Entertainment LLC ("Sony")—not Epic Games—distribute consoles within this District, some of which may be preloaded or bundled with *Fortnite*. *Id.* ¶ 22. Epic Games does not control if or how consoles bundled with *Fortnite* are sold in physical retail spaces within this District. *Id.*

### III. LEGAL STANDARD

IngenioShare "bears the burden of establishing proper venue" under 28 U.S.C. § 1400(b). *See In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013 (Fed. Cir. 2018); *see also Optic153 LLC v. Thorlabs*

---

[1] *See* Fortnite game download page, available at https://www.epicgames.com/fortnite/en-US/download?sessionInvalidated=true.

*Inc.*, 6:19-cv-667-ADA, 2020 WL 3403076, at *1 (W.D. Tex. June 19, 2020) (same).[2] In patent cases, venue is proper only "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516 (2017). If IngenioShare fails to establish that venue is proper in this District, this Court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

## IV.   ARGUMENT

### A.   Epic Games Does Not Reside in the Western District of Texas

Under the first prong of the patent venue statute, "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 137 S. Ct. at 1517. IngenioShare admits that Epic Games is incorporated in Maryland, not Texas. Compl. ¶ 3; *see also* Morgenthaler Decl. ¶ 7. Thus, IngenioShare cannot establish venue by relying on the first prong of the venue statute. *See* 28 U.S.C. § 1400(b).

### B.   Epic Games Does Not Have a Regular and Established Place of Business in this District

Under the second prong of the patent venue statute, which requires that the defendant have a regular and established place of business in this District, IngenioShare must satisfy "three general requirements": "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017). All three factors must be met in order for venue to be proper.

---

[2]   Epic Games' Rule 12(b)(3) motion shifts the burden of proving appropriate venue to IngenioShare. *See ZTE*, 890 F.3d at 1013; *L & H Concepts LLC v. Schmidt*, No. 07 Civ. 0065, 2007 WL 4165259, at *1 (E.D. Tex. Nov. 20, 2007) (citing *Laserdynamics Inc. v. Acer Am. Corp.*, 209 F.R.D. 388, 390 (S.D. Tex. 2002)).

*See id.* Because Epic Games does not have a physical place in this District, venue is not proper here.[3] Although IngenioShare makes allegations regarding Epic Games having a place of business within this District and the use of shelf space of third-party retailers who sell *Fortnite* (Compl. ¶¶ 7, 9), neither allegation is sufficient to establish venue.

### 1. Employee Homes Are Not Regular and Established Businesses of Epic Games

IngenioShare's only allegations regarding Epic Games' employees are that Epic Games has a "website advertising job positions in Austin, Texas," and "has employees working in and from this Judicial District." Compl. ¶¶ 7, 12. As the Federal Circuit made clear in *Cray*, however, merely because a "defendant's employee owns a home in which he carries on some of the work that he does for the defendant" does not establish venue in the district of the employee's home. *See Cray*, 871 F.3d at 1365. Rather, venue is proper only when such employee homes have been established or ratified by the defendant. *See id.* at 1363. In determining whether an employee's home has been ratified by the defendant, courts consider factors such as: (1) "whether the defendant owns or leases the place, or exercises other attributes of possession or control over the place;" (2) "whether the defendant conditioned employment on an employee's continued residence in the district;" (3) "the storing of materials at a place in the district so that they can be distributed or sold from that place;" and (4) "marketing or advertisements . . . to the extent they indicate that the defendant itself holds out a place for its business." *Id.*; *see Bd. of Regents, the Univ. of Tex. Sys. v. Boston Sci. Corp.*, No. 17 Civ 1103, ECF No. 27 at 2 (W.D. Tex. Mar. 12, 2018) (finding venue improper, despite the defendant's 46 in-district employees, because all of the employees "maintain home offices and do not work in locations that are owned, leased, or otherwise

---

[3]   The Texas address listed in the Complaint is merely the address of Epic Games' registered agent located in Dallas, which is not in the Western District of Texas. *See* Compl. ¶ 2.

controlled by Boston Scientific"), *aff'd*, 936 F.3d 1365 (Fed. Cir. 2019); *see also CUPP Cybersecurity LLC v. Symantec Corp.*, No. 3:18 Civ. 01554, 2019 WL 1070869, at *4 (N.D. Tex. Jan. 16, 2019) (finding venue improper because "[e]ven if the record showed that Symantec employees had home offices within the District, CUPP has failed to establish that those home offices would be 'place[s] of the defendant,' as necessitated by the third requirement").

Based on these considerations, IngenioShare's allegations do not establish venue. ***First***, merely advertising job positions for a certain location is insufficient to establish venue. *Cray*, 871 F.3d at 1364 (explaining that "the mere fact that a defendant has advertised that it has a place of business . . . is not sufficient" to show venue). Moreover, job postings do not show that such positions actually were filled in the District. Indeed, as demonstrated on Epic Games' website, any open position that can be filled in Austin, Texas can be filled in several other cities located outside this District. *See* Morgenthaler Decl. ¶ 17.

***Second***, the job positions were for strictly ***remote work***. *Id.* Although job listings on the Epic Games website do not explicitly specify Austin, Texas as a 'remote' location, any person hired in the Austin area in response to those postings would, in fact, be a remote worker, as Epic Games does not maintain an office there. *Id.* ¶¶ 10, 17. Indeed, the 20 Epic Games employees working in this District work from their homes for reasons of personal convenience. *Id.* ¶ 12. But these employees are able to work remotely from or relocate to various states, including without limitation California, Massachusetts, Michigan, and New York. *Id.* Moreover, Epic Games does not own or rent any portion of these employees' homes, nor does it store any inventory there. *Id.* ¶ 14. Epic Games has never required employees to live in Texas as a condition of performing their job, nor held out these employees' homes as Epic Games' place of business. *Id.* ¶¶ 12, 15.

Given that Epic Games has taken no action to establish or ratify the homes of its remote employees as Epic Games' places of business, these homes do not satisfy the *Cray* test, and venue is therefore improper. *Cray*, 871 F.3d at 1363. *Correct Transmission* is illustrative. In that case, this Court found that a defendant with remote employees whose homes were in the Western District did not have a regular and established business in this District. *Correct Transmission LLC v. ADTRAN, Inc.*, 6:20-cv-669-ADA, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021) (Albright, J.). Specifically, home offices failed the *Cray* test because the employees worked in Austin on their "own accord, not because of any requirement by [the defendant]," and the defendant "does not own, rent, or lease any portion of [the employee's] home, nor does it store inventory there." *Id.* (internal quotation marks omitted). Accordingly, the defendant had never "established or ratified" its employees' homes and those homes did not constitute regular and established places of business. *Id.* Similarly, here, the home offices of the Epic Games employees living in this District do not qualify as Epic Games' regular and established places of business.

### 2. Retailers' Stores That Sell *Fortnite* Products Are Not Regular and Established Places of Business of Epic Games

IngenioShare's only other venue-related allegation is that Epic Games has sold *Fortnite* in this District and offered it for sale to this District's residents at authorized retailers, such as Best Buy. Compl. ¶ 9. But such sales by an authorized retailer do not establish venue unless the defendant leases shelf space from the retailer such that the defendant possesses or controls the space. *See In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020); *Koss Corp. v. Skullcandy, Inc.*, 6:20-cv-664-ADA, 2021 WL 1226557 at *2 (W.D. Tex. Mar. 31, 2021) (Albright, J.) ("A defendant need not own real property in the district to fulfill the venue requirement. Rather, the defendant can meet the statutory requirement by ***possessing or controlling*** any physical place in the district.") (emphasis added).

For example, in *Koss Corp. v. Skullcandy, Inc.*, the defendant's products were sold at Best Buy and the defendant paid Best Buy "marketing development funds." *Id.* at *3. The defendant, however, did not pay for product advertising or placement in the stores, and Best Buy retained "sole control and discretion over the manner in which [the defendant's] products [were] sold." *Id.* This Court found venue was improper because the defendant did not have the requisite possession or control over the shelf space. *Id.*

Similarly, in *Koss Corp. v. Peag LLC DBA JBLA Audio*, venue was improper despite the possible existence of "an agency relationship [] between PEAG and some third-party retailers" because the plaintiff failed to show that the defendant exercised the degree of control necessary to establish its retailers as "places of PEAG." 6:-20-cv-662-ADA, Dkt. No. 43 at 6–7 (W.D. Tex. June 22, 2021) (Albright, J.). Absent ownership or lease of real property, "the defendant must control a physical space to establish venue under the patent venue statute." *Id.* at 7. This Court found venue to be improper because "PEAG does not participate in any business operations at the sites where PEAG products are sold, it would be incorrect to determine that PEAG leases or otherwise controls the shelf space that its products are sold on." *Id.* at 6–7. This Court also made clear that "[l]eased shelf space can only serve as a 'regular and established place of business' under the patent venue statute if the defendant *also* has an employee or agent conducting business in that district." *Id.* at 6 (emphasis added). Because there were "no employees or agents of PEAG that regularly conduct business at these display stands," this Court found that "the display stands cannot serve as an adequate basis for venue." *Id.* at 6–7.

The same is true here. Although IngenioShare alleges that certain *Fortnite* products occupy the shelf space of retailers in the District (Compl. ¶ 9), it fails to allege that Epic Games controls or possesses the retail space within the stores. *See generally id.* Epic Games in fact does **not** lease

9

any space in the stores of any retailers in the District. Morgenthaler Decl. ¶ 18. Instead, Epic Games relies on third-party distributors, such as WBHE, Microsoft, Nintendo, Sony, and Samsung, to sell its physical goods, such as hardware bundles or redemption codes. *Id.* ¶ 19–22. In other words, Epic Games does not have direct relationships with retailers in this District, such as Best Buy, that would allow Epic Games to control or possess space within the stores. *See id*. Moreover, Epic Games does not participate in any business operations at the sites where *Fortnite* products are sold. *Id.* ¶ 18. Absent ownership or lease of real property, Epic Games must control physical space in the District to establish venue, but there is no such control here. *See Peag*, 6:20-cv-662-ADA, Dkt. No. 43 at 7. Even if this Court found that Epic Games was somehow able to control shelf space (despite not having any such relationship with retailers), none of Epic Games' 20 employees working in this District conducts any business at all for Epic Games at these retailers. *See id.* at 6–7 (explaining that because there were "no employees or agents of PEAG that regularly conduct business at these display stands, . . . the display stands cannot serve as an adequate basis for venue"); Morgenthaler Decl. ¶ 18. As a result, the shelf space occupied by *Fortnite* products in the stores of third-party retailers are not places of business of Epic Games under the *Cray* test. *See Cray*, 871 F.3d at 1363. Venue is improper.

> **C.     Any Alleged Acts of Infringement Are Irrelevant Because IngenioShare Cannot Show that Epic Games Has a Regular and Established Place of Business in this District**

As explained above, IngenioShare cannot satisfy its burden to show that Epic Games has a regular and established place of business. Accordingly, under the second prong of the patent venue statute, allegations regarding acts of infringement in this District are irrelevant for venue purposes. *See* 28 U.S.C. § 1400(b) (requiring that defendant "has committed acts of infringement **and** has a regular and established place of business") (emphasis added); *Correct Transmission*, 2021 WL

1967985 at *3 (venue not proper regardless of alleged acts of infringement as the defendant lacked a regular and established place of business in the District).

## V.     CONCLUSION

For the foregoing reasons, Epic Games respectfully requests that the Court dismiss this action for improper venue.

Dated: September 2, 2021

Respectfully submitted,

By: /s/ *Paige Arnette Amstutz*

Jeanne M. Heffernan (NY State Bar No. 4104055)
jheffernan@kirkland.com
David Dyer (State Bar No. 24089580)
david.dyer@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Paige Arnette Amstutz (State Bar No. 00796136)
pamstutz@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6343

Joshua L. Simmons (*pro hac vice* pending)
joshua.simmons@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Yimeng Dou (*pro hac vice* pending)
yimeng.dou@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

**CERTIFICATE OF SERVICE**

The undersigned certifies that on September 2, 2021 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/ *Paige Arnette Amstutz*
Paige Arnette Amstutz
