## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| **INGENIOSHARE, LLC,** | |
| Plaintiff, | |
| v. | **Civil Action No. 6:21-cv-00663-ADA** |
| **EPIC GAMES, INC.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## DEFENDANT EPIC GAMES, INC.'S MOTION TO TRANSFER TO THE EASTERN DISTRICT OF NORTH CAROLINA

**TABLE OF CONTENTS**

**Page**

I.     **Introduction** ........................................................................................................... **1**

II.    **Factual Background** .............................................................................................. **3**

    A.     IngenioShare and the Asserted Patents ................................................... 3

    B.     Epic Games and the Accused Technology ............................................... 4

III.   **Legal Standard** ...................................................................................................... **5**

IV.    **Argument** ............................................................................................................... **6**

    A.     This Action Could and Should Have Been Brought in the Eastern District of North Carolina ................................................................................... 6

    B.     All Private-Interest Factors Favor Transfer .............................................. 7

        1.     Factor One Favors Transfer ........................................................ 7

        2.     Factor Two Favors Transfer ........................................................ 9

        3.     Factor Three Favors Transfer .................................................... 10

        4.     Factor Four Favors Transfer ...................................................... 10

    C.     All Public-Interest Factors Favor Transfer or Are Neutral .................... 11

        1.     Factor One Favors Transfer ...................................................... 11

        2.     Factor Two Is Neutral ............................................................... 12

        3.     Factors Three and Four Are Neutral .......................................... 13

V.     **Conclusion** .......................................................................................................... **14**

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Affinity Labs of Tex., LLC v. Blackberry Ltd.*,
   No. 6:13–CV–362, 2014 WL 10748106 (W.D. Tex. June 11, 2014).................................7, 10

*Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*,
   512 F. Supp. 2d 1039 (S.D. Tex. 2007) ..................................................................................12

*In re Apple*,
   979 F.3d 1332 (Fed. Cir. 2020)..............................................................................................13

*Corel Corp. v. Dell Inc.*,
   No. MO-13-CV-040, 2013 WL 12091649 (W.D. Tex. July 25, 2013) ...........................11, 12

*Correct Transmission LLC v. ADTRAN, Inc.*,
   No. 6:20-CV-00669-ADA, 2021 WL 1967985 (W.D. Tex. May 17, 2021) ................. *passim*

*DataQuill, Ltd. v. Apple Inc.*,
   No. A-13-CA-706-SS, 2014 WL 2722201 (W.D. Tex. June 13, 2014) .................9, 10, 11, 12

*In re Genentech, Inc.*,
   566 F.3d 1338 (Fed. Cir. 2009).......................................................................................7, 9, 13

*In re HP Inc.*,
   No. 2018-149, 2018 WL 4692486 (Fed. Cir. Sept. 25, 2018) .................................................10

*In re Hulu, LLC*,
   No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ...............................8, 10, 12, 13

*Infogation Corp. v. Google LLC*,
   No. 6:20-CV-00366-ADA, Dkt. No. 65 (W.D. Tex. Apr. 29, 2021)......................................14

*In re Juniper Networks, Inc.*,
   No. 2021-160, 2021 WL 4343309 (Fed. Cir. Sept. 24, 2021) ................................................13

*Lane v. Scott & White Healthcare*,
   No. A-12-CV-639, 2012 WL 12850262 (W.D. Tex. Nov. 16, 2012).......................................8

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir 2009)...........................................................................................6, 11

*In re Radmax, Ltd.*,
   720 F.3d 285 (5th Cir. 2013) .....................................................................................1, 6, 7, 11

ii

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)...................................................................................8

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2008).............................................................12

*In re Volkswagen AG*,
    371 F.3d 201 (5th Cir. 2004) ...................................................................6

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) .................................................................11

**Statutes**

28 U.S.C. § 1400(b) ...............................................................................6, 7

28 U.S.C. § 1404(a) .....................................................................1, 5, 6, 7

## I.    INTRODUCTION

As explained in Defendant Epic Games, Inc.'s ("Epic Games") motion to dismiss, Plaintiff IngenioShare, LLC ("IngenioShare") cannot establish that venue properly lies in the Western District of Texas ("District").  Dkt. No. 14 ("MTD").  The Eastern District of North Carolina ("EDNC") is "clearly [a] more convenient" forum for this dispute:  the witnesses and documents at the heart of the parties' dispute are located there and IngenioShare, with its home state of California, will not be any more inconvenienced litigating in North Carolina than in this District.

In assessing a request to transfer venue pursuant to Section 1404(a), courts weigh if "the movant demonstrates that the transferee venue is clearly more convenient" by first looking at whether the case could have been brought in the proposed forum and then examining multiple private- and public-interest factors.  *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).  There is no question that this case could have, and should have, been brought in EDNC, where Epic Games' Cary, North Carolina headquarters is located.  And each of the private- and public-interest factors weighs in favor of transfer or is neutral.  Therefore, transfer is warranted.

Regarding the private-interest factors, ***first***, with regard to "the cost of attendance for willing witnesses," the Fifth Circuit recognizes that the weight of this factor increases in direct relationship to the distance witnesses would need to travel to attend trial.  Epic Games' headquarters is located more than 1,000 miles away from the Waco, Texas courthouse, but is less than 10 miles away from the EDNC courthouse in Raleigh, North Carolina.  IngenioShare's likely witnesses will have to travel thousands of miles ***regardless*** of whether the forum is WDTX or EDNC.  This factor, which this Court and others consider to be the "most important," weighs heavily in favor of transfer.  ***Second***, with regard to the "relative ease of access to sources of proof," all of Epic Games' relevant witnesses and documents are located in EDNC or elsewhere outside

1

this District.  For its part, IngenioShare appears to have no presence in this District.  The **third factor**, "the availability of compulsory process to secure the attendance of witnesses," favors transfer because EDNC would have compulsory power over multiple non-party witnesses, including former employees and third-party contractors who have worked on *Fortnite's* in-game communication system ("Accused Technology"), whereas this Court would not.  **Fourth**, with respect to "all other practical problems that make trial of a case easy, expeditious and inexpensive," because most witnesses (party and non-party alike) are located in EDNC, transfer to that district would make the case far easier and less expensive.

Likewise, the public-interest factors support transfer.  **First**, regarding "the local interest in having localized interests decided at home," EDNC is not only where Epic Games is headquartered but where the design, development, marketing, and technical support for the Accused Technology occur.  By contrast, this District has no local interest in the case given that neither Epic Games nor IngenioShare has a presence here.  The **second factor,** "the administrative difficulties flowing from court congestion," is neutral because as a non-practicing entity ("NPE") without a position in the market, IngenioShare has no pressing need for a quick resolution.  **Third**, both EDNC and this District are familiar with federal patent law, making this factor neutral.  The **fourth factor**, "the avoidance of unnecessary problems of conflict of laws or in the application of foreign law," is neutral as the Complaint did not tee up any such issues.

Given that the case could and should have been brought originally in the Eastern District of North Carolina and that the private- and public-interest factors overwhelmingly favor transfer, Epic Games respectfully requests that the Court transfer this case to that district.

## II.     FACTUAL BACKGROUND

### A.     IngenioShare and the Asserted Patents

IngenioShare is a limited liability company organized under California law.  Dkt. No. 1 ("Compl.") ¶ 2.  IpVenture, Inc., a patent portfolio company, appears to be IngenioShare's predecessor-in-interest.  *See id.* ¶ 19; *id.* Exs. A–D.  Epic Games is not aware of any products that IngenioShare or IpVenture manufactures or sells that practice the claimed inventions of the patents-in-suit, nor does IngenioShare allege any in the Complaint.  *See generally* Compl.  Other than initiating a lawsuit here, IngenioShare has no discernable connection to or interest in the Western District of Texas.

The four asserted patents, U.S. Patent 10,708,727 ("the '727 patent"), U.S. Patent 10,492,038 ("the '038 patent"), U.S. Patent 10,142,810 ("the '810 patent"), and U.S. Patent 8,744,407 ("the '407 patent") (collectively, "Asserted Patents") are members of a family of more than 15 patents generally directed to messaging technology.  None of the named inventors of the Asserted Patents (Dr. Kwok Wai Cheung, Peter Tong, or C. Douglass Thomas) is based in this District.  Compl. ¶ 21; Declaration of David Dyer, dated October 5, 2021 ("Dyer Decl.") ¶ 3, Ex. A.  Specifically, Dr. Cheung is located in Hong Kong, and Messrs. Tong and Thomas are located in California.  *Id.*  Both IpVenture, the past assignee of the Asserted Patents, and IngenioShare, the current assignee, are incorporated in California and apparently conduct business there.  Compl. ¶ 2; Dyer Decl. ¶¶ 4-5, Ex. B-C.  Inventors Tong and Thomas are co-founders of IpVenture.  Dyer Decl. ¶ 3, Ex. A.

Over the past ten years, IpVenture has filed numerous lawsuits asserting patent infringement including in the District of Delaware, the Northern District of Illinois, the Northern District of California, and this District.  Dyer Decl. ¶¶ 6-7, Ex. D-J.  The listed inventors of the

Asserted Patents were also listed as inventors on patents asserted in those cases.  Dyer Decl. ¶ 8, Ex. K-P.

### B.      Epic Games and the Accused Technology

Epic Games is a corporation organized under Maryland law.  It is headquartered in Cary, North Carolina, within the Eastern District of North Carolina.  Compl. ¶ 3; Declaration of Lara Morgenthaler, dated October 5, 2021 ("Morgenthaler Decl.") ¶ 6.  Epic Games is a leading interactive entertainment company and a provider of 3D engine technology.  *Id.*  It is particularly well known for its *Fortnite* video game.  *Id.*  Generally, *Fortnite* is played concurrently by multiple players, and contains an in-game communication system that allows players to communicate with one another during gameplay.  Declaration of Andrew Grant, dated October 5, 2021 ("Grant Decl.") ¶ 5.

IngenioShare alleges that *Fortnite's* in-game communication system infringes IngenioShare's patents.  Compl. ¶¶ 29–32.  Notably, almost all the Accused Technology identified by IngenioShare as evidence of infringement was primarily designed, developed, and marketed from Epic Games' EDNC headquarters.  Grant Decl. ¶¶ 7-12.[1]  As a result, the potential trial witnesses in this case responsible for the design and development of the Accused Technology— including various developers, engineers, and programmers—are located in EDNC:

---

[1]  A small part of the Accused Technology was partially designed and developed by Epic Games employees based in Bellevue, Washington. Grant Decl. ¶ 12.  That team, however, was directed by and worked closely with a team at Epic Games' North Carolina headquarters, which made the final decisions on the creation of the Accused Technology.  *Id.*  For example, one engineer, Dmitry Kozlov, designed and developed some parts of the Accused Technology from the Bellevue office, but he did so in collaboration with and under guidance from the core team at Epic Games' headquarters.  *Id.*  Moreover, he and the other engineers in Bellevue regularly traveled to North Carolina during the development period so that they could work more closely with the decision-makers there.  *Id.*  Mr. Kozlov is willing to travel to EDNC to testify at trial. *Id.*

- Epic Games' Senior Software Engineer Michael Kirzinger.  *Id.* ¶ 11.

- Core members of the *Fortnite* team responsible for the design and development of the Accused Technology.  *Id.* ¶ 11.

- Other developers, engineers, and programmers who are involved in the development and technical support of the Accused Technology.  *Id.* ¶ 11.

Similarly, the financial team that tracks the sales of and costs associated with *Fortnite* is located at Epic Games' EDNC headquarters, and Epic Games' Vice President of Marketing, Matt Weissinger, is also located there.  Morgenthaler Decl. ¶ 10.

Additionally, *Fortnite's* highly confidential, carefully guarded source code is maintained in EDNC.  Grant Decl. ¶ 9.  Epic Games' Information Security team is able to set up a source code review computer in a highly confidential environment in a designated source code review room within Epic Games' EDNC headquarters.  *Id.*  Epic Games plans to employ this set-up in this case to ensure the necessary protection of its critical source code.  *Id.*

Epic Games has no presence in the Western District of Texas.  MTD, at 5-10.  As of the filing of Epic Games' Motion to Dismiss on September 2, 2021, out of the 3,557 Epic Games full-time employees worldwide, only 20 of those employees choose to work from their homes in the Austin, Texas area.  Morgenthaler Decl. ¶ 8.  Even then, none of these employees is involved in developing or maintaining the Accused Technology.  *Id.* ¶ 9.[2]

## III.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28

---

[2]    Moreover, the Bellevue team working on the Accused Technology does not work with anyone in this District on that technology, and has no occasion to travel here. Grant Decl. ¶ 10.

U.S.C. § 1404(a).  A movant must first show that the case could have been brought in the proposed

transferee district.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  Then, the court

weighs multiple private- and public-interest factors to determine whether transfer is appropriate.

*Radmax*, 720 F.3d at 288.  "[T]he Fifth Circuit forbids treating the plaintiff's choice of venue as a

factor in the analysis of a request to transfer . . . ."  *In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed.

Cir 2009).

## IV.   ARGUMENT

IngenioShare could have brought this lawsuit in EDNC, and each of the private- and public-

interest factors weighs in favor of transfer or is neutral.  Thus, EDNC is "clearly [a] more

convenient" forum, and transfer under § 1404(a) is appropriate.  *Radmax*, 720 F.3d at 288.

### A.   This Action Could and Should Have Been Brought in the Eastern District of North Carolina

According to 28 U.S.C. § 1400(b), "[a]ny civil action for patent infringement may be

brought in the judicial district where the defendant resides, or where the defendant has committed

acts of infringement and has a regular and established place of business."  In *Correct Transmission

LLC v. ADTRAN, Inc.*, this Court found that the plaintiff "could have and should have" brought

suit in the district where the defendant was based, because its "corporate headquarters,

manufacturing, and technical support facilities" were all in that district.  No. 6:20-CV-00669-

ADA, 2021 WL 1967985, at *4 (W.D. Tex. May 17, 2021) (Albright, J.).

Here, it is indisputable that IngenioShare could and should have brought this action in

EDNC.  Epic Games' headquarters is in Cary, North Carolina, and its executives run the company

from that location. Morgenthaler Decl. ¶¶ 6-7.  In addition, the Accused Technology was primarily

designed, developed, and marketed from Epic Games' North Carolina headquarters.  Grant Decl.

6

¶¶ 7-12.  Given that the acts IngenioShare alleges constitute patent infringement occurred in EDNC, and Epic Games has a regular and established place of business there, venue is undoubtedly proper in EDNC.  28 U.S.C. § 1400(b).

### B.    All Private-Interest Factors Favor Transfer

The Fifth Circuit considers four private-interest factors: (1) "the cost of attendance for willing witnesses"; (2) "the relative ease of access to sources of proof"; (3) "the availability of compulsory process to secure the attendance of witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Radmax*, 720 F.3d at 288.  Each favors transfer here.

### 1.    Factor One Favors Transfer

With regard to "the cost of attendance for willing witnesses," the Federal Circuit has held that "[t]he convenience of the witnesses" is the "single most important factor in the transfer analysis."  *In re Genentech, Inc.*, 566 F.3d 1338, 1343–45 (Fed. Cir. 2009).  This Court similarly acknowledges the importance of this factor.  *Correct Transmission*, 2021 WL 1967985, at *5 ("[T]he convenience of the witnesses is probably the single most important factor in the transfer analysis." (quoting *Affinity Labs of Tex., LLC v. Blackberry Ltd.*, No. 6:13–CV–362, 2014 WL 10748106, at *4 (W.D. Tex. June 11, 2014))).  As the Fifth Circuit explained in *Radmax*, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  720 F.3d at 288–89 (internal quotation marks omitted).

Here, Epic Games' headquarters is 1,200 miles from the Waco courthouse.  Dyer Decl. ¶ 9, Ex. Q.  By contrast, it is only 10 miles from Epic Games' offices to the EDNC courthouse in Raleigh.  Dyer Decl. ¶ 10, Ex. R.  As a result, EDNC is far more convenient for Epic Games'

witnesses, the majority of whom are located in that district.  *See supra* p. 4.  Indeed, Epic Games is not aware of any relevant witnesses located in this District or anywhere else in Texas.  Thus, the cost and disruption to make the majority of Epic Games' witnesses available in this District—over 1,000 miles from Epic Games' EDNC headquarters—will be substantially higher than if the case were to proceed in EDNC.  *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *5 (Fed. Cir. Aug. 2, 2021) ("[an] analysis discounting the inconvenience to [party] witnesses is fundamentally at odds with the purpose of a transfer for convenience of the witnesses ….").

In contrast with the clear distinction in convenience for Epic Games, it does not appear that this District is any more convenient than EDNC for IngenioShare.  Given IngenioShare is incorporated in California with its claimed inventors located there or abroad, *see supra* p. 3, its witnesses will need to travel more than 100 miles to either forum.  Moreover, two of the inventors of the patents-in-suit are officers or otherwise part of IngenioShare's predecessor-in-interest, IpVenture, which has brought lawsuits in both Illinois and Delaware.  *See supra* p. 3.  This shows that IngenioShare's witnesses are willing to travel across the country to litigate patent cases and IngenioShare's "choice to litigate [its] claims in this [District] is entitled to much less deference since plaintiff neither "resides or works" in the District.  *Lane v. Scott & White Healthcare*, No. A-12-CV-639, 2012 WL 12850262, at *2 (W.D. Tex. Nov. 16, 2012) ("when plaintiff files suit outside of home forum, presumption that choice of forum is convenient and appropriate applies with 'less force'"); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) ("the assumption that the chosen forum is appropriate is in such cases 'less reasonable'").  And it does not appear that IngenioShare manufactures or sells any products, *see supra* p. 3, making it unlikely to have as many potential witnesses as Epic Games.  Because EDNC is far more convenient for Epic Games than this District, and the two districts are equally convenient for

IngenioShare, this factor supports transfer.  *Lane*, 2012 WL 12850262, at *2 (noting that courts do not generally give deference when "plaintiff's chosen forum is neither his home forum nor the forum in which the conduct underlying the plaintiff's cause of action occurred").

### 2.   Factor Two Favors Transfer

With regard to "the relative ease of access to sources of proof," the Federal Circuit has explained that in patent infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer" and "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Genentech*, 566 F.3d at 1345.  Additionally, "[t]he Fifth Circuit has cautioned this factor remains relevant despite technological advances having made electronic document production commonplace." *DataQuill, Ltd. v. Apple Inc.*, No. A-13-CA-706-SS, 2014 WL 2722201, at *3 (W.D. Tex. June 13, 2014).

Here, Epic Games' source code and documents, including those related to the design, development, marketing, and technical support of the Accused Technology, are located at its EDNC headquarters. Grant Decl. ¶ 8.  Moreover, although some of Epic Games' documents may be maintained electronically, it intends to make its confidential source code available for inspection in a secure room at its EDNC headquarters. *See supra* p. 5.  In contrast, Epic Games is not aware of any relevant evidence located in this District. Morgenthaler Decl. ¶ 8.  Thus, this factor favors transfer. *Genentech*, 566 F.3d at 1345–46 ("[k]eeping this case in the Eastern District of Texas will impose a significant and unnecessary burden on the petitioners to transport documents that would not be incurred if the case were to proceed in the" transferee venue where petitioners' "corporate documents relating to the development, manufacturing, and marketing of . . . accused infringing products are housed").

      3.    <u>Factor Three Favors Transfer</u>

With regard to "the availability of compulsory process to secure the attendance of witnesses," a "[c]ourt cannot compel a non-party witness to travel 100 miles, or to travel within the same state the witness is located in, if he or she would incur substantial expense." *Affinity Labs*, 2014 WL 10748106, at *5. If multiple third-party witnesses are identified and they are overwhelmingly located within the subpoena power of only the transferee venue, "this factor favors transfer even without a showing of unwillingness for each witness." *Hulu*, 2021 WL 3278194, at *4 (citing *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)).

Here, Epic Games employs contractors, most of whom are located in EDNC, to quality test *Fortnite*. Grant Decl. ¶ 13. Furthermore, various former employees are also located near the EDNC courthouse. Morgenthaler Decl. ¶11. These third-party contractors and former employees would be subject to compulsory process in EDNC, but not in this District. *See Affinity Labs*, 2014 WL 10748106, at *5. Epic Games is not aware of any relevant third-party witnesses in this District. Thus, this factor supports transfer, particularly given the presumption afforded under *Hulu*. 2021 WL 3278194, at *4.

      4.    <u>Factor Four Favors Transfer</u>

With regard to "other practical problems that make trial of a case easy, expeditious and inexpensive," this factor favors transfer when most witnesses are in the transferee forum, and the plaintiff has no presence in the district where it filed the complaint. *Correct Transmission*, 2021 WL 1967985 at *5 (citing *DataQuill*, 2014 WL 2722201, at *4).

As discussed above, almost all of Epic Games' witnesses are located in EDNC, none of Epic Games' witnesses are located in this District, *see supra* p. 4, and IngenioShare does not have

a presence in this District, *see supra* p. 3.  Although IngenioShare filed its lawsuit here, the Fifth

Circuit "forbids treating the plaintiff's choice of venue as a factor in the analysis of a request to

transfer." *Correct Transmission*, 2021 WL 1967985 at *5 (citing *Nintendo,* 589 F.3d at 1200).

Thus, this and all of the private-interest factors favor transfer.

C.      **All Public-Interest Factors Favor Transfer or Are Neutral**

The public-interest factors are: (1) "the local interest in having localized interests decided

at home"; (2) "the administrative difficulties flowing from court congestion"; (3) "the familiarity

of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary

problems of conflict of laws [or in] the application of foreign law." *Radmax*, 720 F.3d at 288

(internal quotation marks omitted).  As discussed below, none of them weighs against transfer.

1.      Factor One Favors Transfer

With regard to "the local interest in having localized interests decided at home," this factor

"focuses on the 'factual connection' a case has with both the transferee and transferor venues;

however, local interests that 'could apply virtually to any judicial district or division in the United

States' are disregarded in favor of particularized local interests." *Corel Corp. v. Dell Inc.*, No.

MO-13-CV-040, 2013 WL 12091649, at *4 (W.D. Tex. July 25, 2013) (citing *In re Volkswagen

of Am., Inc.*, 545 F.3d 304, 318 (5th Cir. 2008)).  "A jurisdiction where a party's principal place

of business is located does have a particularized interest in the suit's outcome" and thus, "if a court

finds a jurisdiction is 'clearly the center of gravity with respect to the witnesses and parties to this

case, this factor weighs in favor of transfer.'"  *Id.*  In patent cases, infringement allegations "call[]

into question the work and reputation of residents" of the district where the allegedly infringing

products are developed.  *DataQuill*, 2014 WL 2722201, at *4 (internal quotation marks omitted).

Here, Epic Games' headquarters and principal place of business are in EDNC, and the Accused

Technology was designed, developed, supported, and marketed from there.  *See supra* p. 4.  These circumstances give the citizens of EDNC an undeniable, strong local interest in this case. *DataQuill*, 2014 WL 2722201, at *4.

By contrast, the only connection to this District appears to be the fact that some citizens here have bought and used the Accused Products in the District.  But the district where the Accused Products are sold is "largely irrelevant, as the mere presence of accused products in a district does not create a local interest."  *Id.*; *see In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (no local interest where vehicles with allegedly infringing parts were sold in district as its citizens "have no more or less of a meaningful connection to this case than any other venue" where the parts were sold.); *see also Amini Innovation Corp. v. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1046 (S.D. Tex. 2007) (nationwide sales of some accused goods including sales to a Texas-based company create only an "attenuated relationship" with the Southern District of Texas.)."  *Correct Transmission*, 2021 WL 1967985 at *6.  Given that there appears to be no other connection, "it would be an undue burden on the people of [this District] to assign them jury duty when they have no interest in this case being resolved."  *Corel*, 2013 WL 12091649 at *4.  Indeed, this District is not even a proper venue for this litigation for the reasons explained in Epic Games' motion to dismiss.  MTD, at 5-11.

2.    Factor Two Is Neutral

With regard to "the administrative difficulties flowing from court congestion," the Federal Circuit holds that "a court's general ability to set a fast-paced schedule is not particularly relevant to the court congestion factor."  *Hulu*, 2021 WL 3278194, at *5.  Rather, courts should consider "the close similarity of cases per judgeship and average time to trial of the two forums, [while] disregarding the particular district court's ability to push an aggressive trial date" in the pending

case.  *Id.*  However, "even if the balance of this factor had tipped slightly against transfer, this slight imbalance alone would not have been enough to tip the scales in favor of denying transfer" because "this factor often calls for speculation."  *Id.* (citing *In re Apple*, 979 F.3d 1332, 1344 at n.5 (Fed. Cir. 2020); and further citing *Genentech*, 566 F.3d at 1347 ("not[ing] that this factor appears to be the most speculative, and case-disposition statistics may not always tell the whole story") (internal citations omitted)).

According to Federal Court Management Statistics, this District has 749 pending cases per judgeship, whereas EDNC has 946 cases.  Dyer Decl. ¶ 11, Ex. S.  The average time from filing to trial for civil cases in 2021 is 23.8 months in this District, while it was 47.6 months in the EDNC. *Id.*  However, Epic Games is not aware of any administrative difficulties flowing from court congestion in EDNC that would weigh against transfer.  And even though this Court is likely to bring cases to trial more quickly, that fact is not "worthy of weight" in a case such as this. IngenioShare's Complaint is devoid of allegations that it manufactures or sells any products that practice the claimed inventions of the patents-in-suit.  *See supra* p. 3.  As an NPE, IngenioShare has no "position in the market [that] is being threatened," and therefore has no real "need of a quick resolution."  *In re Juniper Networks, Inc.*, No. 2021-160, 2021 WL 4343309, at *7 (Fed. Cir. Sept. 24, 2021) ("[e]ven if the district court's projection of the likely time to trial in the two venues is accurate, the court did not point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight" given that the plaintiff "is not engaged in the manufacture or sale of products that practice the asserted patents").  Therefore, this factor is neutral.

3.     <u>Factors Three and Four Are Neutral</u>

The remaining two public-interest factors—"the familiarity of the forum with the law that

will govern the case" and "the avoidance of unnecessary problems of conflict of laws"—are neutral. Regarding the former, all federal courts are equally capable of applying the uniform body of federal patent law, which the Federal Circuit also applies, making that factor neutral. *See Infogation Corp. v. Google LLC*, No. 6:20-CV-00366-ADA, Dkt. No. 65 at *12 (W.D. Tex. Apr. 29, 2021) ("The law applied is the same in both the [transferee court] and the WDTX; therefore, this factor is neutral."). Regarding the latter, there are no applicable conflicts of law or foreign law issues that are readily apparent from the Complaint, making that factor neutral as well. *Id.*

## V.     CONCLUSION

If the Court does not grant Epic Games' motion to dismiss, Epic Games respectfully requests that the Court transfer this litigation to the Eastern District of North Carolina because all factors favor transfer or are neutral.

14

Dated: October 5, 2021                    Respectfully submitted,

/s/ *Jeanne M. Heffernan*
Jeanne M. Heffernan (NY State Bar No. 4104055)
jheffernan@kirkland.com
David Dyer (State Bar No. 24089580)
david.dyer@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
(512) 678-9100

Paige A. Amstutz (State Bar No. 00796136)
pamstutz@scottdoug.com
SCOTT DOUGLASS & MCCONNICO LLP
303 Colorado Street, Suite 2400
Austin, TX 78701
(512) 495-6343

Joshua L. Simmons (admitted *pro hac vice*)
joshua.simmons@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Yimeng Dou (admitted *pro hac vice*)
yimeng.dou@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400

*Attorneys for Defendant Epic Games, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on October 5, 2021 all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system.

/s/*Jeanne M. Heffernan*
Jeanne M. Heffernan


**CERTIFICATE OF CONFERENCE**

On September 8, 2021, pursuant to Local Rule CV-7, counsel Jeanne M. Heffernan for Defendant met and conferred with counsel Cortney Alexander for Plaintiff, and counsel for Plaintiff indicated that Plaintiff is opposed to the relief sought by Defendant in this Motion.

/s/*Jeanne M. Heffernan*
Jeanne M. Heffernan