PUBLIC VERSION

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| INGENIOSHARE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC.,<br><br>    Defendant. | Civil Action No. 6:21-cv-00663-ADA |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS FOR IMPROPER VENUE**

**PUBLIC VERSION**

**Table of Contents**

I.   Introduction ................................................................................................... 1

II.  Legal Standard .............................................................................................. 1

III. Argument ...................................................................................................... 2

IV.  Conclusion .................................................................................................... 6

PUBLIC VERSION

## Table of Authorities

**Cases**

*Assetworks, Inc. v. City of Cincinnati*,

   No. SA-02-CA-351-FB, 2003 U.S. Dist. LEXIS 23878 (W.D. Tex. Feb. 13, 2003)............1, 3

*Correct Transmission LLC v. ADTRAN, Inc.*,

   No. 6:20-cv-669-ADA, 2021 U.S. Dist. LEXIS 93102 (W.D. Tex. May 17, 2021).............1, 5

*In re Cordis*,

   769 F.2d 733 (Fed. Cir. 1985)......................................................................2, 3, 4, 5

*In re Cray*,

   871 F.3d 1355 (Fed. Cir. 2017)…..……………………………………………………….2, 4, 5

PUBLIC VERSION

Plaintiff IngenioShare, LLC submits this opposition to Epic Games, Inc.'s motion to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3).

## I.      Introduction

Epic's assertion that its employees' home offices in the Western District of Texas do not constitute places of business of Epic ignores the pertinent facts admitted by Epic's Rule 30(b)(6) representative during venue discovery. Since March 2020 and continuing through today (including on the date Plaintiff's complaint was filed), Epic's offices were shut down. Its employees were required to work from home. In recognition of this fact, Epic began ████████ ██████████████████████████████. Moreover, Epic's employees could not relocate wherever they wanted, but (should they wish to remain an Epic employee) must work in a limited number of Epic-approved locations). Under these circumstances, where Epic's 20 employees in the Western District of Texas had no choice but to work from their home offices, subjecting themselves to Epic's policy on workplace meetings and offering others a view into their home offices, Epic ratified its employees' homes as its places of business.

## II.     Legal Standard

Venue in patent-infringement actions is governed by 28 U.S.C. § 1400(b). Under § 1400(b), venue is proper in districts where the defendant has a regular, established place of business and has committed acts of infringement. Venue is analyzed as of the time the complaint was filed. *See Correct Transmission LLC v. ADTRAN, Inc.*, No. 6:20-cv-669-ADA, 2021 U.S. Dist. LEXIS 93102, at *7 (W.D. Tex. May 17, 2021). Facts outside the pleadings may be considered. *See Assetworks, Inc. v. City of Cincinnati*, 2003 U.S. Dist. LEXIS 23878, at *43 (W.D. Tex. Feb. 13, 2003). Moreover, "[u]ncontroverted facts alleged in the complaint are taken as true and any conflicts in the evidence are resolved in plaintiff's favor." *Id.*

**III.     Argument**

For purposes of its motion to dismiss, Epic does not dispute that it has committed acts of infringement in this District, meaning the only issue in dispute is whether it has a regular, established place of business in this District. This case was filed on June 25, 2021, so that is the date at which venue is analyzed.

In March 2020, Epic Games shut down all of its offices, including its Cary, NC headquarters. Declaration of Cortney S. Alexander Ex. A, Deposition of Lara Morgenthaler at 54:2-15, 49:19-25. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 50:1-5. Epic only allows employees to enter its headquarters in very limited exceptions, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* at 54:13-22. Thus, nearly all of Epic's 3,557 employees were working exclusively from their homes on the date the complaint was filed (and that remains true today). *Id.* at 55:4-11; Dkt. 14-1 at ¶ 9. For that reason, in March 2020, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. A, Morgenthaler Dep. at 51:13-23. Epic did not ▇▇▇▇▇▇ prior to shutting down its offices in March 2020. *Id.* at 51:24-52:1. The ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* at 52:2-11. Applying Federal Circuit precedent to these facts, Epic has ratified the home offices of its twenty employees working in the Western District of Texas as its regular, established places of business.

While the business in the District must not be transient in order to be established (*In re Cray*, 871 F.3d 1355, 1363 (Fed. Cir. 2017)), the Federal Circuit has rejected the argument that a regular, established place of business requires "a formal office or store." *In re Cordis*, 769 F.2d 733, 737 (Fed. Cir. 1985). Rather, depending on the circumstances, an employee's home can

constitute the requisite "permanent and continuous presence" in which the employer "does its business." *Id.* Here, Epic incorrectly states that its employees in this District work from their homes for reasons of personal convenience. As discussed above, as of the complaint's filing date, Epic had no open offices at which its employees could do business other than their homes. They had to conduct their business from their home offices, which were built up at least in part using ███████████.

Moreover, Epic's employees in this District are not free to move wherever they want. Epic specifically advertises jobs in this District because it wants to take advantage of the talent market in Austin, Texas. Ex. A, Morgenthaler Dep. at 20:3-9. Epic has advertised positions with Austin, Texas identified as the primary location for the job. Alexander Decl. Ex. B, Morgenthaler Dep. Ex. 12 at 1 (advertising a position for HR Technology Lead in Austin, Texas); Alexander Decl. Ex. D, Morgenthaler Dep. Ex. 6 at 1.[1] Epic has advertised many other jobs that could be filled in Austin. Alexander Decl. Ex. E, Morgenthaler Dep. Ex. 8; Alexander Decl. Ex. B, Morgenthaler Dep. Ex. 12; Ex. A, Morgenthaler Dep. at 67:21-68:21, 85:15-88:5. By its own admission, Epic currently has 20 employees in Austin, including employees having responsibilities including the accused Fortnite game and who have familiarity with the accused

---

[1] While Epic's Rule 30(b)(6) witness testified identifying Austin as the primary location was an error, she provided no supporting evidence. Given Epic's admitted desire to take advantage of the Austin talent market, it is not surprising it would want to base human-resources personnel in that market. Indeed, Epic's interrogatory responses ███████████████████████████████ ███████████████. Ex. C, Epic's Response to Interrogatory No. 1 █████████████████████ ████████████████████████████████████████████████████████████████████; *see also* Ex. A, Morgenthaler Dep. at 38:13-16, 39:8-15. Conflicts in the evidence are resolved in plaintiff's favor on a motion to dismiss for improper venue. *See Assetworks, Inc. v. City of Cincinnati*, No. SA-02-CA-351-FB, 2003 U.S. Dist. LEXIS 23878, at *43.

functionality. Alexander Decl. Ex. C, Epic's Response to Interrogatory No. 1. Epic only allows employees to work in locations where Epic supports workers. Ex. A, Morgenthaler Dep. at 58:23-59:13. ████████████████████████████████████████████████████████████████ ████████████████████████████████████████. Ex. A, Morgenthaler Dep. at 58:23-60:25. So if an Epic employee in this District desired to move to another location, it could only continue working for Epic from that new location subject to Epic's approval. *Id.* at 59:11-13. Therefore, Epic's utilization of its employees' homes in this District is not transient.

Second, the defendant's business must not be "sporadic." *In re Cray*, 871 F.3d at 1362-63 (citing *Knapp-Monarch Co. v. Casco Prods. Corp.*, 342 F.2d 622, 625 (7th Cir. 1965) (a semiannual display at trade show was only a temporary presence)). Since Epic has required its employees to work from their homes since March 2020, it cannot be reasonably argued that its employees' work in this District is sporadic.

Third, the place of business must be established or ratified by the defendant. *See In re Cray*, 871 F.3d at 1363. The Federal Circuit has recognized that an employer may ratify the homes of its employees as its places of business. *In re Cordis*, 769 F.2d at 737; *see also In re Cray*, 871 F.3d at 1363 ("One can also recognize that a small business might operate from home."). While Epic would not normally be characterized as a small business, it has been operating like a small business since March 2020 in the sense that, with very limited exceptions, it provides its employees no office but instead requires them to work from home. It requires its employees, including those in Austin, to participate in Zoom meetings, providing a view into their home offices where they conduct Epic's business. Ex. A, Morgenthaler Dep. at 50:6-51:10. The same conduct policies governing in-person meetings at Epic apply to participation in Zoom meetings. *Id.* at 57:19-58:13 ("████████████████████████████████████

4

███████████████████████████████████████████████████████████."). Thus, Epic regulates the conduct of its employees in their homes. This use and regulation of employee's home offices goes significantly beyond the circumstances of *In re Cordis*, where the Federal Circuit's finding was based on the defendant's employees merely storing some inventory in their homes. *In re Cordis*, 769 F.2d at 737. Epic makes no meaningful effort to argue otherwise. The cases it cites, such as *Correct Transmission*, 2021 U.S. Dist. LEXIS 93102, did not involve present facts such as Epic's requirement that its employees work from home or its effort to present itself as having an Austin presence. If the Federal Circuit has recognized that a small business may be considered to operate from its employees' homes, it would be quite inequitable for large businesses to be shielded from a similar determination when they likewise require their employees to operate from their home offices.

The Federal Circuit has also noted that the defendant's representations that it has a place of business in the district are relevant. *In re Cray*, 871 F.3d at 1363-64. Here, Epic has done just that, advertising positions in Austin, Texas. Epic highlights its more than forty offices worldwide. Dkt. 14-2 at 2. While Epic advertised positions in certain locations as "remote," it did not refer to Austin as a "remote" location. *Id*. Epic wanted to take advantage of the talent market in Austin (Ex. A at 20:3-9), and apparently found it beneficial to advertise an Austin presence without characterizing its Austin presence as "remote." This fact further supports the finding that Epic has ratified its employees home offices as its places of business, especially given that, on the date Plaintiff's complaint was filed, all Epic offices were closed (and remain so today).

5

## IV. Conclusion

For the foregoing reasons, Defendant's motion to dismiss for improper venue should be denied.

**PUBLIC VERSION**

This 17th day of December, 2021.

/s/ Cortney S. Alexander
Cortney S. Alexander
cortneyalexander@kentrisley.com
Tel: (404) 855-3867
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022

Stephen R. Risley
(pro hac vice to be submitted)
steverisley@kentrisley.com
Tel: (404) 585-2101
KENT & RISLEY LLC
5755 N Point Pkwy Ste 57
Alpharetta, GA 30022


Attorneys for Plaintiff

7