IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| INGENIOSHARE, LLC,<br>*Plaintiff* | § § § § § § § § § § § | |
| -vs- | | W-21-CV-00663-ADA |
| EPIC GAMES, INC.,<br>*Defendant* | | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT EPIC GAMES, INC.'S MOTION TO DISMISS FOR IMPROPER VENUE

Came on for consideration Defendant Epic Games, Inc.'s ("Epic" or "Defendant") Motion to Dismiss for Improper Venue. ECF No. 14. After venue discovery, Plaintiff IngenioShare, LLC filed its opposition. ECF No. 24. Epic then filed its reply. ECF No. 28. After careful consideration of the briefing, the Court **GRANTS** Defendant's Motion to Dismiss for Improper Venue.

### I.  BACKGROUND

On June 25, 2021, IngenioShare filed the instant suit alleging Epic infringed and continues to infringe one or more claims of United States Patent Nos. 10,708,727 (the "'727 Patent"), 10,492,038 (the "'038 Patent"), 10,142,810 (the "'810 Patent"), and 8,744,407 (the "'407 Patent"). ECF No. 1 ¶¶ 90, 96, 102, 107, 113, 118, 124. The Complaint asserts both direct and indirect infringement. *Id.*

IngenioShare is a limited liability company organized under California law. ECF No. 1 ¶ 2. IngenioShare partners "with inventors and entrepreneurs to provide innovative market-driven ideas and user-friendly technologies." *Id.* ¶ 18. "One set of its novel solutions relates to

1

communication technologies, applicable to multiplayer video games." *Id.* Epic is a corporation organized under Maryland law and headquartered in Cary, North Carolina. *Id.* ¶ 3; ECF No. 14-1 ¶ 7. IngenioShare alleges that Epic has a place of business in Austin, Texas. ECF No. 1 ¶ 3. Epic, in response, filed this Motion to Dismiss for Improper Venue (the "Motion"). ECF No. 14.

## II.     LEGAL STANDARD

Section 1400(b) of title 28 of the United States Code "constitute[s] the exclusive provision controlling venue in patent infringement proceedings." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1518 (2017) (internal quotation marks omitted). A claim for patent infringement must be brought "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see also Optic153 LLC v. Thorlabs Inc.*, Civil Action No. 6:19-CV-00667-ADA, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020). Section 1400(b) is intentionally restrictive, and it is Plaintiff's burden to establish proper venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013–14 (Fed. Cir. 2018).

Under the first prong, the Supreme Court has held that "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute." *TC Heartland*, 137 S. Ct. at 1517. Under the second prong, the Federal Circuit interpreted a "regular and established place of business" to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.,* 871 F.3d 1355, 1360 (Fed. Cir. 2017). Failure to satisfy any statutory requirement requires a finding of improper venue. *Id.* Furthermore, the Court must "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought" if Plaintiff is unable to establish proper venue. 28 U.S.C. § 1406(a).

### III.   ANALYSIS

**A.   Defendant Epic Does Not Reside in the Western District of Texas**

Under 28 U.S.C. § 1400(b), a claim for patent infringement must be brought (1) "in the judicial district where the defendant resides," or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." Epic resides in Maryland. ECF No. 1 ¶ 3. ECF No. 14-1 ¶ 7. It is undisputed that venue would be improper as to Epic under the first prong of 28 U.S.C. § 1400(b). ECF No. 14 at 5; ECF No. 1 ¶ 3; ECF No. 24 at 2 ("the only issue in dispute is whether it has a regular, established place of business in this District").

Venue, therefore, hinges on the Court's analysis of the second prong: "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). Defendant contends that venue is improper in the Western District of Texas, alleging it has no regular and established place of business in this District. ECF 14 at 5. IngenioShare maintains that the Western District of Texas is the appropriate venue because Epic has committed acts of infringement and has a regular and established place of business via work-from-home employees. ECF No. 24 at 2–5. IngenioShare's Complaint also alleges venue via authorized retailers in this District, but IngenioShare fails to further that argument in its response to Defendant's Motion. ECF No. 1 ¶ 9.

**B.   Defendant Epic Does Not Have a Regular and Established Place of Business in the Western District of Texas**

IngenioShare contends that venue is proper because Epic "ratified the home offices of its twenty employees working in the Western District of Texas as its regular, established places of business." ECF No. 24 at 2. IngenioShare relies on *In re Cordis* for the proposition that a regular, established place of business does not require "a formal office or store." *Id.* (quoting 769 F.2d 733, 737 (Fed. Cir. 1985)). IngenioShare highlights that, on the date of the filing of the

Complaint, Epic had closed all offices and all employees "had to conduct their business from their home offices, which were built up at least in part using Epic's home stipend." *Id.* at 3. Plaintiff also argues that the (now) remote employees of Epic were not free to move wherever they want but were restricted to certain locations supported by Epic. *Id.* at 4. IngenioShare further notes that the Austin job posting was not listed as "remote," though other locations included the specifier. *Id.* at 5. Last, IngenioShare contends that Epic regulates the conduct of its employees in their homes via conduct policies applicable to Zoom. This, according to Plaintiff, "goes significantly beyond the circumstances of *In re Cordis*, where the Federal Circuit's finding was based on the defendant's employees merely storing some inventory in their homes." *Id.* at 5 (citing *In re Cordis*, 769 F.2d at 737). IngenioShare, therefore, posits that "[i]f the Federal Circuit has recognized that a small business may be considered to operate from its employees' homes, it would be quite inequitable for large businesses to be shielded from a similar determination when they likewise require their employees to operate from their home offices." *Id.*

Plaintiff's arguments are not new. Time and again, this Court has rejected remote employees as a basis for establishing venue under similar facts. And, while Plaintiff tries to support its argument with nuanced arguments of Zoom policies enforced at home, stipends, and location restrictions, such arguments still do not meet the demands of venue set out by the Federal Circuit. *Cray* may appear outdated to plaintiffs given the impact COVID-19 had on employers and forcing many to work from home. But the elements of the test have not changed. Nor can this Court stray from or expand the test in reaction to the temporary impact of COVID-19.

### i. *Remote employees alone do not satisfy a regular and established place of business of Defendant*

The first *Cray* element, "a physical place in the district," is satisfied with an employee's home in the District. *See Cray*, 871 F.3d at 1362 ("there must still be a physical, geographical location in the district from which the business of the defendant is carried out"). At the very least, twenty employees work for Epic from home in this District. Each home is a physical place in this district. Factors two and three of the *Cray* test are interrelated. One cannot analyze "place" without addressing whether said place is a place *of the defendant*. Because the Court finds that the employees' homes are not places of Epic, the Court need not engage in a lengthy analysis of the second factor alone: whether the employees' homes are regular and established places of business.

As noted in *Cray*, "that the regular and established place of business must be 'the place of the defendant,' is crucial here." 871 F.3d at 1364. A work-from-home employee's residence is insufficient alone. *In re Cray*, 871 F.3d at 1365 ("The statute clearly requires that venue be laid where 'the defendant has a regular and established place of business,' not where the defendant's employee owns a home in which he carries on some of the work that he does for the defendant.") (quoting *Am. Cyanamid Co. v. Nopco Chemical Co.*, 388 F.2d 818, 820 (4th Cir. 1968)); *see also In re Cray*, 871 F.3d at 1363 ("As the statute indicates, it must be a place *of the defendant*, not solely a place of the defendant's employee.") (emphases in original). IngenioShare argues that these remote employees had no choice but to work from their home offices and even received a home stipend sufficient to establish venue. ECF No. 24 at 2. IngenioShare relies on a pre-*TC Heartland* opinion, *In re Cordis Corp.* But *Cray*, post-*TC Heartland*, clarified when an employee's home office constitutes a regular and established place of business *of the defendant*.

5

The Federal Circuit provided several factors, including: (1) whether a defendant owns, leases, or rents any portion of its employees' homes, (2) whether a defendant played a part in selecting the place's location, storing inventory or conducting demonstrations there, (3) conditioning employment or support on the maintenance of a location in the district, and (4) marketing or advertisements that indicate that the defendant itself holds out a place for its business. *In re Cray*, 871 F.3d at 1363, 1365.

Regarding the first factor, Epic does not own, lease, or rent any portion of the homes of its twenty Austin employees. ECF No. 28 at 2. The work stipend, provided to all Epic employees to manage the adjustment was neither restrictive nor ongoing. ECF No. 28 at 3. Instead, the stipend was left open ended as a "one time discretionary after-tax payment of $5,000" with the goal of providing employees "the flexibility to help address issues as they relate to working from home." *Id.*; ECF No. 28-1 at 2. As noted in the email, Epic put the onus on its employees: "You know your personal situation and what makes you most effective." *Id.* It is too far a stretch to say that such a one-time payment constitutes owning, leasing, renting, or even reimbursement for its employees' homes such that the employees' homes are places of Defendant.

Furthermore, and perhaps in line with the second factor, IngenioShare argues that Epic "regulates the conduct of its employees in their homes." ECF No. 24 at 5. Specifically, Epic requires its employees to participate in Zoom meetings, "providing a view into their home offices where they conduct Epic's business." "The same conduct policies governing in-person meetings at Epic apply to participation in Zoom meetings." *Id.* at 4. Per IngenioShare, these facts go beyond the circumstances in *In re Cordis*, where the Federal Circuit found venue "based on the defendant's employees merely storing some inventory in their homes." *Id.* at 5. Last, IngenioShare argues that it would be inequitable to find that a small business can operate from its

6

employees' homes, but allow large businesses "to be shielded from a similar determination when they likewise require their employees to operate from their home offices." The Court is unpersuaded. First, the facts at hand do not go beyond those in *Cordis*. In *Cray*, the Federal Circuit outlined the basis of its decision to deny a petition for mandamus in *Cordis*: "Cordis publicly advertised a secretarial service office located within the district as a place of business of its own and used its employees' homes like distribution centers." 871 F.3d at 1365. Here, Epic does not hold out its employees' homes as places of Epic. Nor does having conduct regulations for Zoom equate to using employee homes as distribution centers. Second, and it bears repeating, the relevant inquiry is whether Epic controls the place, not the conduct, of its employees. *Id.* at 1363 ("Relevant considerations include whether the defendant owns or leases *the place*, or exercises other attributes of possession or control over *the place*.") (emphasis added). Focus on *the place* is directly tied to the statute and cannot be sidestepped.

Third, IngenioShare argues that the locations in which Epic employees can work are restricted. But those restrictions do not erect boundaries around the Western District of Texas. *See In re Cray*, 871 F.3d at 1363 ("Another consideration might be whether the defendant conditioned employment on an employee's continued residence *in the district*…") (emphasis added). Austin employees work from their homes because Epic has no Austin office. And even though all Epic offices have been closed due to the pandemic, Epic never required that its Austin employees' homes be located in this District. ECF No. 28 at 3. Those employees are free to "work remotely from or relocate to other States, including California, Massachusetts, Michigan, and New York." ECF No. 14 at 3, 7. They can even move within Texas but outside of this District. ECF No. 24-2, 19:17-22 ("Q. Okay. Would Epic be comfortable having employees work remotely in Beaumont? A. Yes."). Therefore, even if Epic restricts locations wherein it will

support its remote employees, those restrictions are not district specific. Because Epic's employees in the Western District of Texas are free to move and work remotely outside of this District, this factor does not support a finding a venue.

Fourth, IngenioShare points to job advertisements in this District to take advantage of the talent market in Austin, Texas. ECF No. 24 at 3. The advertised positions allegedly identified Austin, Texas as a primary location for the "Referral Specialist" job. The parties dispute whether a conflict exists between Epic's Rule 30(b)(6) witness and the job posting. Plaintiff argues that this presents a material conflict, and that conflicts in the evidence are resolved in plaintiff's favor on a motion to dismiss for improper venue. *See Assetworks, Inc. v. City of Cincinnati*, No. SA-02-CA-351-FB, 2003 U.S. Dist. LEXIS 23878, at *43 (W.D. Tex. Feb. 13, 2003) (citing *McCaskey v. Continental Airlines, Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001)). However, even if a conflict exists and the Court accepts Plaintiff's version of the facts, marketing for a job position in Texas does not impute venue. "In the final analysis, the court must identify a physical place, of business, *of the defendant*." *In re Cray*, 871 F.3d at 1363–64 (emphasis added).

### ii. *Authorized retailers in the District are not regular and established places of Epic.*

As previously noted, IngenioShare's Complaint claims venue is proper via authorized dealers in this District. ECF No. 1 ¶ 9. However, such sales by an authorized retailer do not establish venue unless the defendant exercises some possession or control over the shelf space, usually in the form of a lease. *In re Google LLC*, 949 F.3d 1338, 1343–44 (Fed. Cir. 2020). Epic does not lease any space in the stores of any retailers in the District. ECF No. 14 at 10; ECF No.14-1 ¶ 18 ("Epic Games does not lease any shelf or rack-space from retailers located in the Western District of Texas. Similarly, Epic Games does not control how Best Buy and other Western District of Texas retailers sell Epic Games' *Fortnite* products. In fact, none of the 20

8

employees who happen to be located in the District nor any other Epic Games employees participate in business operations at these retailers."). Thus, Epic lacks any control over physical space in the District necessary to establish venue. Additionally, IngenioShare fails to rebut any of this in its response, seemingly abandoning the argument altogether.

## IV.    CONCLUSION

For the above reasons, the court finds that venue is improper in the Western District of Texas. It is therefore **ORDERED** that Defendant Epic Games, Inc.'s Motion to Dismiss for Improper Venue (ECF No. 14) is hereby **GRANTED**. Defendant Epic Games, Inc.'s Motion to Transfer Venue is **MOOT**. Accordingly, Defendant Epic Games, Inc. is dismissed.

SIGNED this 18th day of March, 2022.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE